## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., | Case No. 24-cv-2688 (LMP/SGE) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART RAYMOND JAMES'S MOTION FOR INTERPLEADER DEPOSIT** |
| AUGSBURG UNIVERSITY, GATES PHILANTHROPY PARTNERS, STEEN FAMILY FOUNDATION, and CAROLYN NOEHL, | |
| Defendants. | |

Plaintiff Raymond James & Associates, Inc. ("Raymond James") brought this interpleader action pursuant to 28 U.S.C. § 1335. ECF No. 1. Raymond James now brings a Motion for Interpleader Deposit, in which it requests to deposit disputed funds with the Clerk of Court and be dismissed from this action. ECF No. 44. All Defendants agree that the Court should allow Raymond James to deposit the funds. The Court grants Raymond James's motion to the extent it seeks to deposit funds. Raymond James's request to be dismissed from the lawsuit is another matter. Defendant Carolyn Noehl ("Noehl") objects to Raymond James's dismissal because she has alleged counterclaims against Raymond James. ECF No. 50. Because Noehl's counterclaims assert a cause of action independent of the interpleader action, the Court denies Raymond James's request to be dismissed.

## BACKGROUND

### I.    Interpleader Complaint

Raymond James is a Florida financial services firm.  ECF No. 1 ¶ 1.  In November 2023, Peter Steen—Noehl's brother for whom Noehl had power of attorney—became a Raymond James client and opened an investment account.  *Id.* ¶¶ 10, 17–18.  Zachary Bolden ("Bolden"), a Raymond James financial advisor, was responsible for managing Steen's account.  *Id.* ¶ 12.  Starting in January 2024, Bolden met with Steen several times to discuss or change the account's beneficiary information.  *Id.* ¶¶ 17–23.  Ultimately, on January 23, 2024, Steen allegedly executed a document naming Defendants Augsburg University ("Augsburg"), Gates Philanthropy Partners ("Gates"), and the Steen Family Foundation ("SFF") as beneficiaries.  *Id.* ¶¶ 23–24.

Soon after, Noehl emailed Bolden to ask that she be added as a joint owner of the account, but Steen allegedly denied her request.  *Id.* ¶¶ 25–26.  On February 15, 2024, Noehl and Bolden met with Steen, and Steen again denied Noehl's request to be added as a beneficiary but stated that he would consider it further.  *Id.* ¶ 27.  Unfortunately, Steen died on February 22, 2024.  *Id.* ¶ 28.  At the time of his death only Augsburg, Gates, and SFF were listed as Steen's beneficiaries, and the account was valued at approximately $161,000.  *Id.* ¶¶ 30, 32.

On May 13, 2024, Noehl told Raymond James that she believed the beneficiary designations were invalid because Steen was not mentally well at the time he made them.  *Id.* ¶ 31.  Accordingly, Noehl informed Raymond James that she would contest the transfer of funds to those beneficiaries.  *Id.*

On July 11, 2024, Raymond James brought this interpleader action pursuant to 28 U.S.C. § 1335. *See generally id.* Raymond James alleges that it has no stake in the funds, but that because Noehl is contesting the beneficiary designations, it cannot determine the correct beneficiaries without exposing itself to multiple liability. *See id.* ¶¶ 34–39. Accordingly, pursuant to the interpleader statute, Raymond James now seeks to deposit the disputed funds with the Clerk of Court and be dismissed from the case. *Id.* ¶ 43.

## II.    Noehl's Answer and Counterclaim

Noehl filed an answer on September 9, 2024. ECF No. 18. First, Noehl asserts that she is the Personal Representative of the Estate of Peter T. Steen, and that Raymond James has incorrectly named her as an individual person. *Id.* at 1. In that capacity, Noehl not only makes a claim to the Raymond James funds but also brings counterclaims of negligence and breach of contract against Raymond James. *Id.* at 11–12.

Noehl asserts that she was close with Steen and that he "repeatedly advised her that she was his beneficiary to his investments and accounts upon his death." *Id.* at 8. Noehl explains that Steen moved to an assisted living facility in October 2023 due to his "serious and chronic medical conditions, including Parkinson's, depression and post-polio syndrome." *Id.* She also asserts that, on January 21, 2024, Steen reported to an emergency department where staff noted that he was "lethargic, with poor judgement [and] poor attention/concentration," that his speech was "slurred with delayed responses," and that he was "confused." *Id.*

Despite his allegedly poor state of mind, Bolden visited Steen on January 22 and 23, 2024. *Id.* at 9. During these meetings, Steen apparently expressed his desire to name

Augsburg, Gates, and SFF as beneficiaries to the funds. *Id.* Yet, according to Noehl, Steen had little to no relationship with any of those entities. *Id.* And, notably, Steen's will itself provides Noehl as the primary beneficiary of Steen's estate. *Id.* at 11.

Noehl brings counterclaims for negligence and breach of contract, asserting that Raymond James and Bolden owed Steen a duty of care to "assist him in his investment choices and beneficiary designations," which they breached when they helped Steen make beneficiary designations despite his lack of mental capacity to do so. *Id.* at 11–12. Noehl asks the Court to find the January 2024 beneficiary designations invalid and to reform the designations to make Steen's estate the sole beneficiary. *Id.* at 6. Noehl also seeks $161,000 in damages. *Id.* at 11–12.[1]

## III.    Motion to Deposit Funds

On March 31, 2025, Raymond James filed a motion to deposit interpleader funds, making two requests. First, Raymond James seeks the Court's permission to deposit $147,077.44 in the Court's registry, representing the contested funds ($164,057.44) minus attorneys' fees it incurred in bringing the interpleader action ($16,980.00). ECF No. 44 ¶¶ 1–6. No Defendant opposes this request. *Id.* ¶ 6. Second, Raymond James asks to be dismissed with prejudice from the case, arguing that once it deposits the funds it has no

---

[1]    This is one of three interpleader actions relating to Steen's death. Each involves a separate insurance policy or investment account owned by Steen at the time of his death, but each involves the same core parties: Noehl, Augsburg, Gates, and SFF. *See generally Athene Annuity & Life Co. v. Augsburg Univ.*, No. 24-cv-3545 (D. Minn. Sept. 5, 2024), ECF No. 1; *Noehl v. Eagle Life Ins. Co.*, No. 24-cv-4092 (D. Minn. Oct. 31, 2024), ECF No. 1.

stake in the outcome. *See id.* ¶ 7. Noehl opposes this request and argues that interpleader discharge is not appropriate because Noehl's counterclaims against Raymond James are independent of the interpleader funds and that Raymond James must remain a party so that she can litigate those claims. ECF No. 50 at 3.

## ANALYSIS

### I.    The Propriety of Discharge

"Interpleader is a procedural device that allows a party holding money or property, concededly belonging to another, to join in a single suit two or more parties asserting mutually exclusive claims to the fund." *Wittry v. Nw. Mut. Life Ins. Co.*, 727 F. Supp. 498, 499 (D. Minn. 1989). Interpleader is "designed to protect stakeholders not only from double or plural liability but also from duality or plurality of suits." *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1306 (8th Cir. 1977). "The typical interpleader action proceeds in two distinct stages." *Prudential Ins. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). At the first stage, "the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants." *Id.* During the second stage, "the court determines the respective rights of the claimants to the interpleaded funds." *Id.* "The result is that the competing claimants are left to litigate between themselves, while the stakeholder is discharged from any further liability with respect to the subject of the dispute." *Id.* (cleaned up).

This action remains in the first stage because, although no party challenges the propriety of Raymond James's interpleader action, Noehl opposes Raymond James's

discharge on the grounds that she has asserted claims independent of the interpleader action. ECF No. 50 at 2. The Court agrees with Noehl.

Generally, a "stakeholder lacking an interest in the fund should be discharged from the action upon payment of the fund into the court registry." *United of Omaha Life Ins. Co. v. Womack-Rodriguez*, 461 F. Supp. 3d 455, 471 (W.D. Tex. 2020) (citation omitted). But "where a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court." *Hovis*, 553 F.3d at 264; *see also Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) ("[I]nterpleader protection generally does not extend to counterclaims that are not claims to the interpleaded funds."). Indeed, an interpleader defendant might be required to bring the independent counterclaim in the interpleader action. *See Lee*, 688 F.3d at 1009 (citation omitted) (noting that "in most instances of this type, the counterclaim will be compulsory").

A counterclaim is not independent when it is merely an assertion that a stakeholder "fail[ed] to resolve its investigation in [the counterclaimant's] favor." *Hovis*, 553 F.3d at 264. This is because interpleader protection is afforded precisely so that a stakeholder is not forced to determine the proper recipient of contested funds. *Lee*, 688 F.3d at 1009 (citation omitted) (explaining that interpleader "prevents the stakeholder from being obliged to determine at his peril which claimant has the better claim"). But counterclaims *are* independent when they do not revolve solely around the determination of "who [is] entitled to" proceeds, *Hovis*, 553 F.3d at 264–65, because "interpleader was not intended to extinguish independent tort claims." *Lee*, 688 F.3d at 1012.

6

Noehl asserts counterclaims of negligence and breach of contract.  ECF No. 18 at 11–12.  She does not purport to bring these claims on her own behalf against Raymond James, but in her capacity as the representative of Steen's estate.[2]  And her claims, in turn, assert that Raymond James—through its financial advisor Bolden—"owed a duty of care to [Steen] to assist him in his investment choices and beneficiary designations" and breached that duty when it executed the beneficiary changes while Steen was "hospitalized, in grave condition, and lacked the capacity to make beneficiary designations."  *Id.* at 11.  In other words, while factually related, Noehl's tort claim against Raymond James for negligently assisting Steen in making the disputed beneficiary changes is legally distinct from the issue of whether Raymond James properly decided not to distribute the disputed funds to Steen's estate.

Such a claim is clearly independent of the interpleader action.[3]  In *State Farm Life Insurance Company v. Bryant*, for comparison, an interpleader defendant sought to assert a negligence counterclaim against a stakeholder for "mishandling of the Insured's

---

[2]    *See* Minn. Stat. § 524.3-703(c) ("Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent . . . has the same standing to sue . . . in the courts of this state . . . as the decedent had immediately prior to death."); *see also* Minn. Stat. § 524.3-715(22) (authorizing personal representative to "prosecute or defend claims[] or proceedings" to protect the interests of estate).

[3]    It also appears to be an arguably cognizable theory of negligence.  *See, e.g.*, *Barnes v. Prudential Ins. Co.*, 76 F.3d 889, 893 (8th Cir. 1996) (entertaining a negligence claim that a financial advisor failed to effect desired beneficiary designations); *Ehrhardt v. Penn Mut. Life Ins. Co.*, 902 F.2d 664, 667 (8th Cir. 1990) (alleging negligence where financial advisor misadvised policy owner about certain changes to her beneficiary documents).  As Raymond James did not move to dismiss the negligence or breach of contract counterclaims, the Court presumes their validity at this stage.

7

beneficiary designation." No. 3:18-cv-1628-L, 2019 WL 7938266, at *12 (N.D. Tex. May 16, 2019). The court explained that "any such claims are independent of [the counterclaimant's] claim to recover the Policy proceeds" because "any recovery for these independent claims will not be paid out of the Policy proceeds, regardless of whether [she] prevails on her claim to recover the Policy proceeds." *Id.*

Likewise, in *Lee*, the counterclaimant alleged that a financial advisor negligently and erroneously effected a beneficiary change, which led to a later dispute about the proper beneficiary. 688 F.3d at 1012. The Ninth Circuit explained that the negligence counterclaim did not "arise from" the stakeholder's "failure to resolve the controversy" in the counterclaimant's favor but arose from the claim that "[b]ut for [the advisor's] erroneous recording" of disputed beneficiary changes, the counterclaimants "would not have been forced to litigate their adverse claims against the plaintiffs." *Id.*; *see also* 44B Noah J. Gordon, Am. Jur. Interpleader § 4 (2d ed. May 2025 update) (emphasis added) (footnote omitted) ("It is not the function of an interpleader rule to bestow upon the stakeholder immunity from liability for damages that are unrelated to the act of interpleading, *such as negligence in preserving the fund*.").

As in those cases, while Noehl seeks a judgment that Steen's estate is the proper beneficiary of the funds, she also seeks a judgment that Raymond James is independently liable to the estate for negligence, for which she might recover separately and in addition to the amount of the fund itself. *Lee*, 688 F.3d at 1011 (emphasis added) ("[W]here the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from tort liability, *nor from liability in excess of the stake*.").

8

Accordingly, because Noehl's counterclaims are independent of the interpleader issue itself, the Court denies Raymond James's request for discharge at this stage.

## II.    Motion to Deposit Funds

Raymond James alternatively asks that if the Court does not grant discharge, the Court should nevertheless authorize Raymond James to deposit the disputed funds minus attorneys' fees.  ECF No. 46 at 14.  No party objects to either request, and the Court will grant it.  *Protective Life Ins. Co. v. Kridner*, No. 12-cv-582 (JRT/JJG), 2013 WL 1249205, at *2 (D. Minn. Mar. 27, 2013) (citation omitted) (cleaned up) ("A disinterested stakeholder who is threatened with multiple liability and who interpleads the claimants should ordinarily not bear the expenses it incurs in bringing the action, and is entitled to attorneys' fees.").

Raymond James also asserts that it intends to seek any additional fees it incurs in defending itself against Noehl's counterclaims, pursuant to a "Master Client Agreement" executed between Raymond James and Steen.  ECF No. 46 at 10.  The validity and applicability of that agreement are not presently before the Court.  That issue is for another day, so the Court will therefore not opine on Raymond James's assertion.[4]

---

[4]    But the Court notes, and the parties appear to agree, that a stakeholder has no right to recover attorneys' fees it expends in defending itself against independent counterclaims. *See Kridner*, 2013 WL 1249205, at *6 ("The prohibition on the recovery of fees expended in the stakeholder's own interest usually extends to fees incurred in defending against a counterclaim brought by a claimant against the stakeholder, as such fees are typically expended solely to protect the stakeholder's own interest.").  If Raymond James is ultimately incorrect that the Master Client Agreement allows it to recover any additional attorneys' fees, Raymond James will not otherwise be able to recover those fees through the Court's equitable power to award attorneys' fees incurred by interpleading plaintiffs.

9

**ORDER**

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Raymond James's Motion for Interpleader Deposit (ECF No. 44) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Raymond James is ordered to deposit $147,077.44 into the registry of the Court.  This represents the amount of attorneys' fees that Raymond James incurred in connection with filing this interpleader action ($16,980.00) deducted from the total proceeds at issue ($164,057.44); and

2.  Raymond James's request to be dismissed is **DENIED.**


Dated: May 30, 2025                          *s/Laura M. Provinzino*
                                             Laura M. Provinzino
                                             United States District Judge

10